Opinion issued May 25, 2006 













 
In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00611-CR




MANUAL PEREZ, Appellant




V.

THE STATE OF TEXAS, Appellee




On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 987689

 
 
MEMORANDUM OPINION
           A jury convicted appellant, Manual Perez, of murder and assessed punishment
at 30 years in prison. See Tex. Pen. Code Ann. § 19.02 (Vernon 2003). We
determine (1) whether the trial court abused its discretion by overruling appellant’s
motion for mistrial regarding an eyewitness in-court identification procedure and (2)
whether the trial court erred by refusing appellant’s request to include the lesser-included offense of manslaughter in the jury charge. We affirm the judgment of the
trial court. 
Background 
          On May 13, 2004, appellant and his girlfriend, Charlotte Jones, attended a party
with neighbors Elvira Hernandez, Gloria Escobedo, Jose Perales, and Hilario Mejia
at their apartment complex. Jones left the party, but appellant remained downstairs
at the barbeque until approximately 6:30 p.m. 
          At approximately 9:00 p.m., Hernandez and Escobedo were upstairs in their
apartment and decided to go to the store to buy more beer. Escobedo explained that
she walked out of her apartment’s front door, followed by Hernandez, and that
appellant was in the hallway. Before Escobedo reached the top of the stairwell, she
heard two shots, turned, and saw Hernandez on the floor. Appellant was standing
behind Escobedo with a gun. Escobedo then testified that “[appellant] looked at
[Escobedo] and he looked back down at [Hernandez] and he shot a third time . . . .”
Escobedo explained that appellant stepped over Hernandez’s body, walked past
Escobedo close enough to “rub shoulders,” and walked down the stairwell. 
          At trial, Escobedo had difficulty identifying appellant in the courtroom. The
State asked Escobedo if she saw appellant sitting in the courtroom. Escobedo was
hearing impaired and needed a sign-language interpreter to testify. She also had
retinitis pigmentosa, an eye disease that prevented her from seeing at a distance. The
trial court allowed Escobedo to step down from the witness stand to take a closer look
at the people sitting in the courtroom. Escobedo identified a man sitting in the
audience as the murderer. The State then showed Escobedo a photograph of
appellant, State’s Exhibit 13, which she correctly identified as appellant. The trial
court then ordered appellant to remove his glasses and to stand closer to Escobedo so
that she could get a good look at him. Defense counsel objected because Escobedo
was being directed to go to a certain person after she had been given the opportunity
to walk around and to identify appellant and could not. The trial court overruled the
objection. Escobedo then correctly identified appellant. Appellant moved for a
mistrial because of the in-court identification procedure and controversy over a sign
signal that Escobedo had used. The trial court denied appellant’s motion for mistrial. 
          Perales testified that appellant had walked downstairs carrying a gun
immediately after the shots had been fired and had told Mejia and Perales that he had
shot Hernandez. Evidence was also introduced that, at the time of his arrest,
appellant was in possession of the weapon shown at trial to have been used to shoot
Hernandez and that he had gunshot residue on both hands, indicating that he had
recently fired a firearm. 
          Appellant testified that he and Escobedo had been neighbors for a year. Prior
to the night that Hernandez was killed, appellant claimed, that on three occasions
when she was drunk, Hernandez had tried to steal his money and had tried to beat
him. Appellant testified that after he had left the party, Hernandez approached him,
making accusations about a broken table and threatening to kill him with a knife. At
that time, appellant was inside his apartment and Hernandez was in the hallway
outside his apartment. Appellant testified that he went inside his apartment to get his
gun just to scare Hernandez, not to kill her. Appellant admitted that he shot
Hernandez four times. Appellant requested charges on the lesser-included offenses
of manslaughter and negligent homicide,


 but the trial court denied his request.
 
In-Court Identification Procedure
          In his first point of error, appellant contends that “the trial court erred in
overruling [appellant’s] motion for mistrial after the only eyewitness failed to identify
him and the prosecutor pointed him out for the witness and asked her to identify him
again in front of the jury.” Specifically, appellant complains that the in-court
identification procedure employed during Escobedo’s testimony was impermissibly
suggestive and so prejudicial to appellant that the trial court should have granted his
motion for mistrial.
          We review a trial court’s denial of a motion for a mistrial under an
abuse-of-discretion standard. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App.
1999). A mistrial is an extreme remedy for prejudicial events that occur at trial and
should be exceedingly uncommon. Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim.
App. 1996). A mistrial is required only when the impropriety is clearly calculated to
inflame the minds of the jurors and is of such a character as to suggest the
impossibility of withdrawing the impression produced on the minds of the jurors. 
Hinojosa v. State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). The grant of a mistrial
should not be a common remedy, and even when a prosecutor intentionally elicits
testimony or produces other evidence before the jury that is excludable at the 
 
defendant’s option, our law prefers that the trial continue. Bauder, 921 S.W.2d at
698. 
          Appellant relies primarily on Loserth v. State to support his argument that the
in-court identification procedure was suggestive and was therefore improper. See id.,
963 S.W.2d 770 (Tex. Crim. App. 1998). In Loserth, the court held that the witness’s
pre-trial identification was suggestive, therefore tainting the witness’s in-court
testimony. Id. at 771. Although appellant cites to cases that apply the two-part test
in Loserth, he does not complain on appeal that Escobedo’s pre-trial identification
of him was based on an impermissibly suggestive procedure, but, rather, that
Escobedo’s in-court identification was the result of an impermissibly suggestive
procedure. Therefore, the central question is whether the trial court abused its
discretion by requiring appellant to stand and to take off his glasses so that Escobedo
could correctly identify him. See Guerrero v. State, 838 S.W.2d 929, 932 (Tex.
App.—El Paso 1992, no pet.). 
          Escobedo was first asked to identify generally her neighbor of one year,
appellant, in the courtroom. However, Escobedo was not able to identify appellant
from the witness stand because she could not see at far distances due to her eye
disease. The trial court allowed Escobedo to walk around the courtroom to identify
appellant. She identified a man in the audience who was not appellant. The State
showed Escobedo State’s Exhibit 13 which was a picture of appellant. She correctly
identified appellant as the person in the photograph. The State asked the trial court
to allow the man in the audience to stand next to appellant to see if she could identify
which was appellant. Appellant’s counsel objected, stating:
[APPELLANT’S COUNSEL]: Your Honor, I’m going to
object as to [sic] she was already given the opportunity to
walk around and see if she could identify the defendant.
She has not been able to and now she’s been directed to go
to a certain person. 
 
[COURT]: All right. I’m going to overrule that objection
because she walked behind counsel table to a man in the
audience and looked at him. And I did not see her look at
anybody at counsel table. I’m also going to order him to
take off his glasses. 
 
[APPELLANT’S COUNSEL]: Your Honor, I’m going to
object as to the interpreter is pointing to the defendant so
obviously, she’s going to ID him. 
          The trial court ordered appellant to stand and to remove his eyeglasses. The
State asked Escobedo if she recognized appellant. The sign-language interpreter
stated that Escobedo signed, “I don’t have a really good look at his face. And that
could be [appellant]. It looks like him.” Appellant’s counsel objected, stating,
“Judge, I’m objecting. [Escobedo] had no response when the interpreter was
making–she said ‘It looks like him.’ She at no point—she was standing right in front
of me, never did she say anything looks like him.” The trial court excused the jury
from the courtroom and questioned the interpreter under oath about whether the
interpreter had translated the answer based on Escobedo’s answer. The interpreter
said that that had been Escobedo’s answer and showed the trial court the hand signal
that Escobedo had signed. Appellant’s counsel objected and moved for mistrial. The
trial court denied appellant’s motion for mistrial. Appellant elected not to file a
motion to suppress any in-court identification.
          The jury was brought back into the courtroom, and the State continued to
question Escobedo and asked whether “the man in the white shirt” was appellant. 
Escobedo responded, “That’s [appellant]. That’s the person. I can see—I had a chance
to see him. So yes, I do know that is him.” The State asked that the record reflect that
Escobedo had identified appellant. Appellant made no further objections regarding 
Escobedo’s in-court identification of him. 
          The Court of Criminal Appeals held in Moore v. State that stringent procedures
for in-court identifications are not required. Moore v. State , 424 S.W.2d 443, 444–45
(Tex. Crim. App. 1968); see Wrenn v. State, 478 S.W.2d 98, 100 (Tex. Crim. App.
1972) (holding that district court is “not required to hold an in-court lineup or to force
the state to furnish multi-person confrontations during the trial”); Johnson v. State,
462 S.W.2d 955, 956 (Tex. Crim. App. 1971) (upholding denial of motion for
“multi-person show up at the time of any in-court identification,” noting such request
to be “an ingenious contention”); Mullen v. State, 722 S.W.2d 808, 812 (Tex.
App.—Houston [14th Dist.] 1987, no pet.) (holding that district court did not err by
denying motion for in-court lineup); Baskin v. State, 672 S.W.2d 312, 314 (Tex.
App.—San Antonio 1984, no pet.) (holding that district court not required to hold
in-court lineup). In Moore, a motion was filed requesting “that if the State’s Counsel
requires the witness to identify this Defendant that such identification be made when
the Defendant is seated or standing with other persons of the same general age, race
and sex.” Id., 424 S.W.2d at 444. The Court of Criminal Appeals held the motion to
be without merit. Specifically, the Court of Criminal Appeals stated:
We know of no law which prohibits a court from requiring
that a defendant sit at the counsel table with his attorney
during the trial. Nor do we know of any law which
prohibits state’s counsel from pointing to a defendant in the
courtroom and referring to his physical appearance in the
presence of witnesses. 

Id. at 445. We hold that the State’s mere action of directing the attention of Escobedo
to appellant and asking her whether appellant was involved in the offense,
particularly when the evidence otherwise showed that Escobedo had known him as
a neighbor before the offense was committed, was not improper. See id.; Guerrero
v. State, 838 S.W.2d 929, 931 (Tex. App.—El Paso 1992, no pet.). Unlike pretrial
identification procedures, any concern as to whether a witness’s in-court
identification of the defendant is reliable “can be tested on cross-examination, and
any taint arising from a defendant’s presence with his attorney can be thereby
exposed.” Jordan v. State, 500 S.W.2d 638, 641 (Tex. Crim. App. 1973). Requiring
the defendant to stand next to the incorrectly identified audience member and the
State’s directing Escobedo’s attention toward appellant did not render Escobedo’s
in-court identification so unreliable as to require a mistrial. See Wrenn, 478 S.W.2d
at 100.
          Appellant further contends that “[g]iven the obvious inconsistencies and half-truths in the testimony [of the other witnesses], Escobedo’s eyewitness testimony was
crucial to the State’s case as the remaining evidence linking [appellant] to the murder
was circumstantial and largely inconclusive.” The witnesses’ alleged inconsistencies
and Escobedo’s alleged misidentification of appellant goes to the weight and
credibility of their testimony. See Thomas v. State, 915 S.W.2d 597, 601 (Tex.
App.—Houston [14th Dist.] 1996, pet. ref’d) (holding that complaining witness’s
misidentification of photograph merely goes to weight and credibility of testimony). 
Escobedo’s inability to identify appellant in the courtroom at first certainly did not
prejudice the jury against the defense. See id.
           We hold that the trial court did not abuse its discretion by overruling
appellant’s objection to Escobedo’s in-court identification of appellant. Therefore we
hold that the trial court did not err in denying appellant’s motion for mistrial.
          We overrule appellant’s first point of error. 
Lesser-Included Offense in Jury Charge 
 
          In his second point of error, appellant contends that “[t]he trial court erred in
refusing [appellant’s] request to include the lesser included offense of manslaughter 
in the jury charge at the guilt stage of the trial.” 
          To be entitled to a charge on a lesser-included offense, (1) the lesser-included
offense must be included within the proof necessary to establish the offense charged
and (2) some evidence must exist in the record that would permit a jury rationally to
find that the defendant is guilty only of the lesser offense. Mathis v. State, 67 S.W.3d
918, 925 (Tex. Crim. App. 2002). Manslaughter is a lesser-included offense of the
offense of murder. Moore v. State, 969 S.W.2d 4, 9 (Tex. Crim. App. 1998). 
Manslaughter requires proof that the defendant acted recklessly, that is, that he
consciously disregarded a substantial risk of which he was aware. See Tex. Pen.
Code Ann. §§ 6.03(c), 19.04(a) (Vernon 2003).
          In determining whether there is evidence to support a charge on recklessness,
a statement that the defendant did not intend to kill the victim “cannot be plucked out
of the record and examined in a vacuum.” Godsey v. State, 719 S.W.2d 578, 584 (Tex.
Crim. App. 1986). However, the credibility of the evidence and whether it conflicts
with other evidence or is controverted may not be considered in determining whether
an instruction on a lesser-included offense should be given. Banda v. State, 890
S.W.2d 42, 60 (Tex. Crim. App. 1994). Regardless of its strength or weakness, if any
evidence raises the issue that the defendant was guilty only of the lesser offense, then
the charge must be given. Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App.
1992). 
          Appellant contends that there was evidence at trial to support the charge of
manslaughter because he testified that he felt threatened by Hernandez because she
approached him in an angry, agitated manner with threats and demands for money. 
Appellant admitted that he retrieved a gun from his apartment because he wanted to
scare Hernandez. Appellant testified as follows:
[APPELLANT’S COUNSEL]
: Okay. And is there
anything else that [Hernandez] argued with you
about?
 
[APPELLANT]: Yes. That I had broken [the table]. 
If I did not pay that she was going—that she was
going to get me with the knife and she was going to
kill me. She was angry and drunk.
 
. . . 
 
[APPELLANT’S COUNSEL]:Okay. Now, when
she was telling you this, what did you do next?
 
[APPELLANT]: I went into the closet and I did get
a gun just to scare [Hernandez] away but not to kill
her.
 
. . . 
 
[APPELLANT’S COUNSEL]: Okay. In this
particular day, what did you do after that?
 
[APPELLANT]: Defend myself.
 
[APPELLANT’S COUNSEL]: Okay. What did you
do to defend yourself?
 
[APPELLANT]: I got the gun and I shot her.
 
On direct examination, Escobedo, who was the only eyewitness to Hernandez’s
murder, testified as follows:
 
[ESCOBEDO]: I was almost to the stairs in the
hallway when I heard a shot and felt the floor shake. 
It was like thunder or something like that. And then
a second shot happened really fast and then a third
one. And I turned and saw [Hernandez] fall to the
ground. And [appellant] was standing there with a
gun.
 
. . .
 
[STATE]: Okay. What did you do when you saw
[appellant] with the gun?
 
[ESCOBEDO]: When I turned and saw him, I hid
back behind the side of the wall by the stairwell
because—and I screamed, [appellant], no, no. And
[appellant] saw me and I saw him. We looked at
each other. And he had the gun in his hand, and he
would not move. He stayed there with his gun; and
I said, no, no, no. [Appellant] looked at me and he
looked back down at [Hernandez] and he shot a third
time and I saw fire come from the gun.
Even though appellant claimed that he had obtained his gun because he wanted only
to scare Hernandez, he admitted that he shot Hernandez four times and claimed that
he was defending himself. Thus, appellant intended to shoot Hernandez; he did not
merely shoot her recklessly. 
One cannot accidentally or recklessly act in self-defense. See Martinez v. State,
16 S.W.3d 845, 848 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d); Avila v. State,
954 S.W.2d 830, 843 (Tex. App.—El Paso 1997, pet. ref’d); Johnson v. State, 915
S.W.2d 653, 659 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d). Although
appellant recognizes in his brief that courts of appeals have held that a person cannot
accidentally or recklessly act in self-defense, he asks this Court not to apply the law
in this instance because he intended only to scare Hernandez. Appellant’s testimony
that he acted in self-defense precludes an instruction on an accidental or reckless
murder. See Martinez, 16 S.W.3d at 848. Therefore, the trial court did not err in
refusing appellant’s requested charge on manslaughter.    
We overrule appellant’s second point of error. 
 
Conclusion
 We affirm the judgment of the trial court. 
 
 
 
 
Tim Taft
Justice
 
Panel consists of Justices Taft, Higley, and Bland.