**Robert Wayne DAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–92–128 CR.**

Court of Appeals of Texas, Beaumont.

March 16, 1994.

■

Richard R. Burroughs, Cleveland, for appellant.

Michael R. Little, Dist. Atty. and Steve Greene, Asst. Dist. Atty., Liberty, for the State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BURGESS, Justice.

A jury convicted Robert Wayne Dams of involuntary manslaughter and assessed punishment at two years confinement in the Texas Department of Criminal Justice, Institutional Division. Upon the jury's recommendation, the trial court probated said confinement for a period of two years. Appellant raises five points of error.

▬ Point of error one urges the trial court erred in admitting an autopsy photograph of the deceased. Appellant argues identity was never an issue and the photograph only served to inflame the minds of the jurors. However, appellant refused to stipulate to identity at trial. The victim's mother identified the subject of the exhibit in question as Linda Gayle Maddux, and the assistant medical examiner identified it as a photograph of the person upon whom he performed the autopsy through which the State proved cause of death. The exhibit was relevant. TEX.R.CRIM.EVID. 401. In determining whether the probative value of relevant evidence is outweighed by the danger of unfair prejudice, the trial court should consider the inherent tendency that some evidence may have to encourage resolution of material issues on an inappropriate basis and should balance carefully against it the host of factors affecting probativeness, including relative weight of the evidence and the degree to which its proponent might be disadvantaged without it. *Fuller v. State,* 829 S.W.2d 191, 206 (Tex.Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993); *see also, Long v. State,* 823 S.W.2d 259, 270 (Tex.Crim.App.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). The autopsy incision is visible in the one color photograph, but the picture is not particularly gruesome considering what it depicts. The trial court did not err in its ruling that the probative value of the photograph was not outweighed by the danger of undue prejudice. TEX. R.CRIM.EVID. 403. Point of error one is overruled.

▬ Point of error two contends the trial court erred in admitting the results of a blood test taken in violation of TEX.REV.CIV. STAT.ANN. art. 6701*l*–5 § 3(c) (Vernon Supp. 1994). Appellant's sole cited authority is the statute itself. There were two blood tests before the jury. A blood sample legally obtained at 12:05 a.m. revealed appellant had a .088 blood alcohol content. A Department of Public Safety Crime Lab chemist toxicologist named Lou Haby used this blood sample to extrapolate that appellant's blood alcohol content as of 10:30 p.m. would have been 0.11. On cross-examination defense counsel asked Haby "You have run no tests upon Ronald Wayne Dams' blood, have you, sir?" Haby replied that he had. On re-direct, the State introduced evidence that Haby tested a blood sample taken at 11:03 p.m. by an emergency medical technician in violation of Article 6701*l*–5, on the grounds that appellant had opened the door to its admission by asking Haby about it on direct. The evidence of which appellant complains developed as follows:

Q. [By Prosecutor] Mr. Haby, you testified earlier that you did test a sample of this Defendant's blood. Is that correct?

A. That's correct.

. . . .

Q. Now, regarding the blood sample that you tested, without going into your results, your particular results, do the results of the sample that you tested correspond to the extrapolation you gave us on your direct testimony, the .11?

A. My results fit quite well within the extrapolation that I made earlier in your office. In effect, the results look accurate, like they belong there.

The State recalled Haby the next day and introduced the sample itself. Haby testified that the blood alcohol content of the sample was .10. The paramedic who drew the blood also testified, and the state proved the chain of custody of the sample to the laboratory. This testimony clarified the earlier cross-examination and removed any false impressions. Appellant opened the door to this testimony by asking if the witness had run any tests on appellant's blood. Point of error two is overruled.

■ Point of error three urges the trial court erred in admitting a video tape of a statement by appellant taken outside the presence of counsel after the officers had been advised of representation by counsel. Criminal proceedings commenced when Appellant was arrested pursuant to a warrant obtained through complaint to the Justice of the Peace. *See Barnhill v. State*, 657 S.W.2d 131, 132 (Tex.Crim.App.1983). Police interrogation is a "critical stage" for Sixth Amendment purposes. *Holloway v. State*, 780 S.W.2d 787, 793 (Tex.Crim.App.1989). Appellant's Sixth Amendment right to counsel had attached. Once the Sixth Amendment right to counsel attaches, if the accused is represented by counsel the police may initiate interrogation only through notice to defense counsel, and a defendant's unilateral waiver of his Sixth Amendment right to counsel is invalid. *Id.* at 796. Since the police initiated the interrogation without contacting the attorney, we must determine whether the attorney-client relationship had been established when appellant gave the statement.

■ This case is similar to the facts of *Upton v. State*, 853 S.W.2d 548 (Tex.Crim. App.1993), where the defendant's ex-mother-in-law hired the attorney, who met with the defendant, then told the police that he told the defendant not to talk to the police unless he was present. The *Upton* court found that the statements were taken in violation of the Sixth Amendment right to counsel. In this case, appellant's father had not yet contacted the attorney, although he stated he "retained" the attorney "about" September 23. Appellant never talked to the attorney before giving a statement, but he had read the letter in which the attorney represented that he was representing appellant and that the police should not attempt to question appellant unless he was present. Appellant testified that he gave the officers a copy of this letter when he was arrested, but he did not recall if the officers opened the letter. This testimony was controverted by the arresting officer. Trooper McDaniel testified that appellant's father showed them a copy of the letter the first time he and Trooper Duff arrived to arrest appellant. Appellant was not there, so the officers returned three hours later. Trooper McDaniel testified that appellant neither gave them the letter nor referred to it or the attorney. Appellant never orally indicated that he had an attorney or that the attorney told him not to talk to the police or that he wished to confer with counsel before giving any statement. The trial court is the sole judge of the credibility of the witnesses in a pre-trial hearing; the findings of the court supported by the record will not be disturbed on appeal absent a showing that the trial court abused its discretion. *Lucas v. State*, 791 S.W.2d 35, 47 (Tex.Crim.App. 1989), *vacated on other grounds*, —— U.S. ——, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993). The trial court's finding that no attorney-client relationship had been established at the time appellant's statement was video-taped is supported by the record.

Although advised of his rights, appellant never invoked them. The record reflects that appellant waived assistance of counsel at the time the statement was made. The only act even remotely interpretable as an exercise of his rights is handing the officers the envelope containing the attorney's letter. This was not sufficient to invoke appellant's Fifth Amendment rights. *Lucas*, 791 S.W.2d at 47. We find no violation of appellant's

right to counsel under the Fifth and Sixth Amendments to the United States Constitution. Point of error three is overruled.

Point of error four challenges the sufficiency of the evidence to place appellant behind the wheel at the time of the accident. The standard of review is whether, after viewing all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reviewing the sufficiency of the evidence, we no longer employ the "alternate reasonable hypothesis" construct argued by appellant. *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim. App.1991). Both occupants of the car were thrown from the vehicle as a result of the collision. Stacy Luckey testified that a "little blue car" sped past the vehicle in which he was a passenger. The dome light was on in the car, and he saw a short-haired man driving. Five minutes later they came upon the crime scene in this case. He recognized the car as the one driven by the man who passed them. The driver of Luckey's car also noticed that a man was driving the car. The paramedic at the scene testified that appellant had a semi-circle shaped bruise which indicated he was behind the wheel. A witness at the scene testified that appellant stated that "he (appellant) couldn't keep his hands on the wheel because she kept messing with him." This evidence, together with evidence of the location of abrasions caused by a seat belt, are sufficient to establish appellant as the driver of the vehicle. Point of error four is overruled.

Point of error five complains the trial court erred in excluding the testimony of nurse Mary Jo Martin regarding a "res gestae"[1] statement made at the hospital. The statement, "Well, I wasn't driving," was made as appellant woke up in the intensive care unit, but the nurse testified that it was not the first time he became conscious while in the intensive care unit and appellant had been awake but unresponsive for several hours while in the emergency room. The

trial court excluded the statement because it did not qualify as a TEX.R.CRIM.EVID. 803 exception to the hearsay rule. We find no error. Five to seven hours had elapsed since appellant arrived at the hospital, the statement was not made upon first regaining consciousness, and appellant was not excited at the time. Point of error five is overruled. We affirm the judgment of the trial court.

AFFIRMED.

---

1. The admissibility of evidence is no longer determined by whether it is "res gestae" of an offense. *Rogers v. State,* 853 S.W.2d 29 (Tex. Crim.App.1993) (opinion on rehearing).