# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00829-CR

**The State of Texas, Appellant**

**v.**

**John Edward Morris, Appellee**

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. CR2004-283, HONORABLE GARY L. STEEL, JUDGE PRESIDING**

## O P I N I O N

This appeal concerns the suppression of statements made by an accused who had requested and been appointed counsel but who had not yet consulted with his appointed counsel. After being arrested on the charge of attempted capital murder, appellee John Edward Morris requested the court appoint counsel to represent him. The court granted this request and appointed an attorney. Following the appointment, but before Morris had consulted with his appointed attorney, the police initiated an interrogation during which Morris waived his Sixth Amendment right to counsel and gave several statements to the police. Morris, through counsel, subsequently filed a motion to suppress these statements on the basis that they were obtained in violation of his Sixth Amendment right to assistance of counsel. The district court granted the motion to suppress.

On appeal, the State challenges the district court's order granting Morris's motion to suppress. The single issue presented is whether Morris and his appointed attorney had established

an attorney-client relationship at the time of the police-initiated interrogation that resulted in the statements Morris sought to suppress. "Where a relationship between the accused and his attorney is established after the Sixth Amendment has become applicable, the Sixth Amendment precludes dissolution of that relationship in the absence of counsel." *Holloway v. State*, 780 S.W.2d 787, 795 (Tex. Crim. App. 1989). Such an attorney-client relationship is "entitled to Sixth Amendment protection that *Miranda* warnings and subsequent waiver by the client alone are incapable of overcoming." *Id.* In this case, the State contends that the suppressed statements were obtained prior to the establishment of an attorney-client relationship between Morris and his appointed lawyer. The State argues alternatively that, even if an attorney-client relationship had been established, Morris waived his right to counsel during the interrogation. We conclude that Morris had established an attorney-client relationship with his appointed counsel at the time the suppressed statements were taken and that Morris's waiver of his Sixth Amendment right to counsel during the police-initiated interrogation was invalid. Accordingly, we affirm the ruling of the trial court.

The following facts are undisputed and are included in the district court's findings of fact. On August 27, 2004, Morris was arrested pursuant to a warrant in Comal County. The next day, he made a written request for court-appointed counsel. The district court appointed Mr. Atanacio "Nacho" Campos to represent Morris on August 30, 2004. Although there is no evidence that Campos personally contacted Morris before the police interrogation at issue, the record shows that Campos requested discovery from the State on September 2, 2004, and that the State sent him a notice of arraignment on September 3, 2004.

On September 1, 2004, a Comal County grand jury indicted Morris for attempted capital murder. On September 8, 2004, eight days after counsel had been appointed to represent

2

Morris and six days after Morris's counsel had communicated with the District Attorney's office about the case, law enforcement officers initiated a videotaped interrogation of Morris. The law enforcement officers did not inform Campos or the District Attorney's Office that this interrogation would be taking place. During the interrogation, Morris was warned regarding his rights pursuant to *Miranda* and article 38.22 of the Texas Code of Criminal Procedure. He stated that although "an attorney" would probably advise him not to talk with the police, he would "go ahead and talk to [them]." Morris then purportedly waived his right to be assisted by counsel both verbally and in writing and made several statements to the law enforcement officers.

After consulting with counsel, Morris filed a motion to suppress the September 8, 2004, statements on the basis that the interrogation violated his right to assistance of counsel under the Sixth Amendment and the right against self-incrimination under the Fifth Amendment. He also argued that he did not make an intelligent and knowing waiver of those rights. After a hearing, the trial court granted the motion to suppress.

On appeal, the State contends that the trial court erred by entering the suppression order on the basis that Morris's Sixth Amendment rights had not yet attached because Morris and Campos had not established an attorney-client relationship. Alternatively, the State argues that even if an attorney-client relationship had been established, thereby bringing the Sixth Amendment into play, Morris could validly waive his Sixth Amendment right to assistance of counsel during the interrogation without the involvement of his attorney.

The standard for reviewing a trial court's ruling on a motion to suppress is a bifurcated standard of review, giving almost total deference to a trial court's determination of historical facts and reviewing de novo the court's application of the law. *Maxwell v. State*,

3

73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (*citing Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)).

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. The Sixth Amendment right to counsel attaches at the initiation of adversarial judicial proceedings whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Brewer v. Williams*, 430 U.S. 387, 398 (1977) (*quoting Kirby v. Illinois*, 406 U.S. 682, 689 (1972)(plurality opinion)); *Robinson v. State*, 851 S.W.2d 216, 224 (Tex. Crim. App. 1991). "[T]he Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton*, 474 U.S.159, 176 (1985). After a formal charge is made, a person ceases being a "suspect" and becomes an "accused." The government has committed itself to prosecute and formalized its adversarial position with respect to the defendant. *Kirby*, 406 U.S. at 689. The defendant then "finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." *Id.* The Supreme Court reiterated this point in *Moran v. Burbine*: "It is clear, of course, that, absent a valid waiver, the defendant has the right to the presence of an attorney during any interrogation occurring after the first formal charging proceeding, the point at which the Sixth Amendment right to counsel initially attaches." *Moran v. Burbine*, 475 U.S. 412, 425 (1986).

Following this authority, Texas courts have held that adversarial judicial proceedings have commenced when a person is arrested pursuant to a warrant obtained through a complaint filed with a court. *See Barnhill v. State*, 657 S.W.2d 131, 132 (Tex. Crim. App. 1983) (formal judicial criminal proceedings had been instituted against the accused by the filing of a felony complaint in

justice court); *see also Green v. State*, 872 S.W.2d 717, 720 (Tex. Crim. App. 1994) (noting that *Barnhill* is "consistent with, if not dictated by," United States Supreme Court authority to treat the filing of a felony complaint as a point after which adversarial judicial proceedings have commenced); *Terrell v. State*, 891 S.W.2d 307, 312 (Tex. App.—El Paso 1994, pet. ref'd); *Dams v. State*, 872 S.W.2d 325, 328 (Tex. App.—Beaumont 1994, no pet.). At the time of the interrogation in this case, Morris had been arrested on a felony warrant, had been given an article 15.17 warning hearing, and had been indicted by a grand jury. His Sixth Amendment right to counsel had plainly attached. The State argues, however, that even if his Sixth Amendment rights had attached, Morris's waiver of those rights pursuant to the *Miranda* warnings he received prior to the interrogation was valid.

"One of the primary purposes of the Sixth Amendment right to counsel is to preserve the integrity of the attorney-client relationship once it has been established." *State v. Frye*, 897 S.W.2d 324, 327 (Tex. Crim. App. 1995) (*citing Patterson v. Illinois*, 487 U.S. 285 (1988)). Both the Texas Court of Criminal Appeals and the United States Supreme Court have declared that once an accused has a lawyer, "a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect." *Upton v. State*, 853 S.W.2d 548, 553 n.2 (Tex. Crim. App. 1993) (*quoting Patterson*, 487 U.S. at 289 n.3). Specifically, "after the Sixth Amendment right to counsel attaches and the accused is represented by counsel, the police may initiate interrogation only through notice to defense counsel." *Holloway*, 780 S.W.2d at 795. If the police initiate an interrogation of an accused who is represented by counsel, the accused's waiver of his Sixth Amendment right to counsel during the interrogation, without the involvement of

5

his attorney, will be invalid. *See id.* This is true even in the situation where the accused has received the required *Miranda* warnings. *See id.*

In this case, we find that Morris had established an attorney-client relationship with his court-appointed attorney prior to the police-initiated interrogation on September 8, 2004. The record shows that on August 28, 2004, Morris made a written request for a court-appointed attorney to represent him on the charge of attempted capital murder. The district court appointed Campos to represent Morris on August 30, 2004. According to the court of criminal appeals, "[o]nce an attorney is appointed the same attorney-client relationship is established and it should be protected." *Stearnes v. Clinton*, 780 S.W.2d 216, 222 (Tex. Crim. App. 1989); *Damian v. State,* 807 S.W.2d 407 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd).[1] Therefore, an attorney-client relationship was established between Morris and Campos on August 30, 2004, and Morris could not validly waive his Sixth Amendment rights simply on the basis of *Miranda* warnings without the involvement of his counsel.

The State contends that *Terrell v. State,* 891 S.W.2d 307 (Tex. App.—El Paso 1994, pet. ref'd), supports the argument that an attorney-client relationship had not been established between Campos and Morris. In *Terrell,* an accused gave a confession during a police-initiated interrogation following his arrest for capital murder. *Id.* at 309. During the interrogation, he was

---

[1] It is undisputed that the State was aware of this appointment. The State suggests that there may be some significance to its assertion that the police officers who initiated the interrogation on September 8, 2004, were not actually aware of the district court's appointment of Campos as Morris's attorney. However, the appointment was a matter of record, and the State does not dispute that it was on notice of the appointment. Under such circumstances, whether certain individual officers were not aware of the appointment is irrelevant. *See Michigan v. Jackson*, 475 U.S. 625, 634 (1986).

not informed that his mother had retained an attorney, who was waiting in the hallway, to represent him. *Id.* He also did not invoke his right to an attorney. *Id.* The court found that an attorney-client relationship had not been established because the attorney, who was hired by a third party unbeknownst to the accused, did not meet with the accused, discuss the case with him, or give him any legal advice. *Id.* at 314. Because an attorney-client relationship had not been established with the lawyer retained by a third party, the court concluded that the confession was not obtained in violation of the accused's Sixth Amendment right to counsel. *Id.*

Critical factual differences blunt the precedential value of *Terrell* in this case. Terrell had not invoked his right to counsel. He had not had an attorney appointed to represent him nor had he consulted with the attorney retained by a third party—his mother. By contrast, Morris invoked his right to an attorney and a lawyer had, indeed, been appointed to represent him. The appointment of counsel by the court established an attorney-client relationship between Morris and the appointed lawyer, Campos, until further order of the court. *See Stearnes,* 780 S.W.2d at 222. Simply because Morris had not yet consulted with his appointed counsel prior to the interrogation in question does not negate the existence of the attorney-client relationship established by the court's order appointing Campos as Morris's attorney.

The State argues that an attorney-client relationship was not established between Morris and Campos prior to September 8, 2004, because Morris did not know that he was represented by counsel. The State points to Morris's general statement during the interrogation that "an attorney" would probably tell him not to talk to police as evidence that Morris was not aware that he had an appointed attorney and that, therefore, an attorney-client relationship had not been established. Such an inference from Morris's statement is not supported by the record. The record

7

shows that Morris requested the assistance of counsel and was actually represented by counsel as of August 30, 2004. Regardless of whether Morris was aware that the court had appointed an attorney for him or whether Morris specifically referred to his attorney during the police-initiated interrogation, the undisputed facts in this record show that an attorney-client relationship was established between Morris and Campos on August 30, 2004, and was still in place on September 8, 2004. An oblique reference by Morris to what "an attorney" would advise him does not alter the material facts.

Alternatively, the State contends that even if an attorney-client relationship existed between Morris and Campos, Morris waived his Sixth Amendment right to counsel during the police-initiated interrogation. We disagree. The United States Supreme Court has held that *Miranda* waivers are sufficient to show the voluntary relinquishment required for waiver of the Sixth Amendment right to counsel in a situation where the accused had not retained, requested, or accepted by appointment, a lawyer at the time he was questioned by authorities. *See Patterson,* 487 U.S. at 290. However, if an attorney-client relationship has been established between an accused and his attorney, the accused is "entitled to Sixth Amendment protection that *Miranda* warnings and subsequent waiver by the client alone are incapable of overcoming." *Holloway,* 780 S.W.2d at 795. In other words, an accused who is represented by counsel may not waive his Sixth Amendment right to counsel during a police-initiated interrogation without the involvement of his attorney. *See id.* In this case, the police were required to notify Campos of any police-initiated interrogation of Morris occurring after August 30, 2004, the day an attorney-client relationship was established between Campos and Morris. Because Campos was not notified of or otherwise involved in the

8

September 8, 2004, police-initiated interrogation, Morris's waiver of his Sixth Amendment right to counsel during the interrogation was not valid.

An attorney-client relationship existed between Morris and his court-appointed counsel as of August 30, 2004. Therefore, the State was prohibited from initiating an interrogation of Morris on September 8, 2004, without notice to Morris's counsel. *See Upton,* 853 S.W.2d at 553 (*citing Holloway,* 780 S.W.2d at 795). Additionally, Morris's purported waiver of his Sixth Amendment right to counsel during the September 8, 2004, interrogation was not valid in the absence of Morris's counsel. *Id.* Therefore, the trial court did not err when it granted the suppression order with respect to the September 8, 2004, videotaped statements because these statements were obtained in violation of Morris's Sixth Amendment right to assistance of counsel.

We affirm the order of the trial court granting Morris's motion to suppress.

_____

G. Alan Waldrop, Justice

Before Justices B. A. Smith, Puryear and Waldrop
    Justice B. A. Smith Not Participating

Affirmed

Filed:  May 1, 2007

Publish

9